FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 14, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

———————————————————

MARIO WILLIAMS,

    Plaintiff - Appellant,

v.

TIM WILKINSON; BRIAN WIDEMAN,

    Defendants - Appellees.

No. 15-7022
(D.C. No. 6:13-CV-00206-RAW-SPS)
(E.D. Oklahoma)

———————————————————

## ORDER AND JUDGMENT[*]

———————————————————

Before **HARTZ**, **BALDOCK**, and **McHUGH**, Circuit Judges.

———————————————————

## I. INTRODUCTION

    Mr. Mario Williams, a Muslim serving a life sentence in Oklahoma state prison, sued prison officials for alleged violations of his religious-freedom and equal-protection rights. He named as Defendants in a putative class action Justin Jones, who was at the time Director of the Oklahoma Department of Corrections (ODOC), and Warden Tim Wilkinson and Chaplain Brian Wideman, both of the Davis Correctional Facility (DCF), where Mr. Williams was in maximum-security confinement when he filed the Complaint in this action. Mr. Williams claims these prison officials violated his statutory and

———————————————

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Rule 32.1 of the Federal Rules of Appellate Procedure and Tenth Circuit Rule 32.1.

constitutional free-exercise rights by eliminating communal Muslim prayer services for maximum-security inmates at DCF. He further alleges these prison officials violated his free-exercise rights by denying his faith-based request for a kosher diet. And he asserts an equal-protection violation based on these actions. Mr. Williams pursues these claims on behalf of a "fluid" class of all Muslims in the Oklahoma state prison system.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291,[1] we reverse in part, affirm in part, and remand for further proceedings. We reverse and remand as to the district court's 12(b)(6) dismissal of Mr. Williams's communal-services and kosher-diet claims and its denial of Mr. Williams's motions to appoint counsel and for class certification. But we affirm the 12(b)(6) dismissal of Mr. Williams's equal-protection claim and his personal-capacity claims against former Director Jones and the district court's denial of Mr. Williams's motion to amend.

---

[1] Mr. Williams named the Final Judgment in his notice of appeal. Accordingly, we have jurisdiction to review the district court's order dismissing Mr. Williams's personal-capacity claims against former Director Jones (Dkt. No. 28), its order dismissing Mr. Williams's other claims for failure to state a claim (Dkt. No. 46), and its orders denying Mr. Williams's other motions. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 n.6 (10th Cir. 2009) ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment." (quoting *McBride v. CITGO Petroleum Corp.*, 281 F3d 1099, 1104 (10th Cir. 2002)).

## II.   BACKGROUND[2]

### A.   *Factual Background*

Shortly after Mr. Williams arrived at DCF in August 2008, the prison began allowing Muslim maximum-security inmates to attend Friday communal-prayer services in accordance with Islam. In July 2009 the prison suspended such meetings, citing space and security concerns, but indicated the communal-prayer services would resume in two weeks. DCF never reinstituted the communal-prayer services for Muslim maximum-security inmates. In September 2012, Mr. Williams requested that the prison reinstate the services; DCF denied the request, again citing safety and security concerns. Mr. Williams then initiated and completed the DCF grievance process, thereby exhausting his administrative remedies.

Also on August 16, 2012, nearing the completion of his Ramadan fast, Mr. Williams requested a kosher diet pursuant to his religion.[3] On August 22, 2012, after his

---

[2] Because this matter comes to us on appeal from the dismissal of Mr. Williams's Complaint based on Rule 12(b)(6) for failure to state a claim upon which relief can be granted, we recount the facts as described in the pro se Complaint, accepting well-pleaded allegations as true for purposes of our review. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680–82 (2009). Additionally, although Mr. Williams is represented in this appeal on certain claims, he initially filed the Complaint and his appellate brief pro se. We liberally construe pro se pleadings, *Hall v. Scott*, 292 F.3d 1264, 1266 (10th Cir. 2002), but in doing so we do not undertake the role of a pro se litigant's advocate, *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

[3] Attached to Mr. William's complaint is his Declaration in Support of Class Action Complaint and documents from the DCF grievance procedures. Our factual recitation includes information from these documents. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ( "In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to

request had been denied, he submitted a "Request to Staff" (RTS) documenting and renewing his unsuccessful request and quoting the following verse from Surah 5 of the Qur'an as a "[v]erification to my religious practice"[4]:

> This day are all things [g]ood and pure made lawful unto you. The food of the People of the Book (Jewish) is lawful unto you and yours is lawful unto them.

He then requested, "[p]lease change my diet over to Kosher, pursuant to the above mention[ed] Qu'ranic [sic] verse." Mr. Williams's Complaint alleges that he "requested a religious diet *mandated by* his religion." The RTS form which is attached to the Complaint reflects that prison staff denied his request on August 28, 2012, noting "[d]enied as per OP 030112. The muslim faith is not listed on attachment[.]" In turn, ODOC policy OP 030112, Attachment E, allows only prisoners of the Jewish, Messianic Jewish, or House of Yahweh religions a kosher diet upon request.

Mr. Williams then submitted an Offender Grievance Report Form to the Reviewing Authority in compliance with ODOC's administrative remedies process. On this form, he stated, "[a]llow me a Kosher Diet in accordance to my faith, 'Holy Qu'ran' [sic]: Surah 5:5." When the Reviewing Authority denied this request, Mr. Williams unsuccessfully appealed to the Administrative Review Authority (ARA), again asserting a religious freedom right to be provided a kosher diet in accordance with his religious

---

the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.").

[4] Mr. Williams quoted DCF Policy OP 030112 V.A. "Religious Rites" as follows: "All tenets of an offender's faith practice that require accommodations by the dept. must be supported and verified by the faith's recognized <u>sacred text</u>."

beliefs. The parties agree that Mr. Williams exhausted his administrative remedies as to his kosher-diet claim.

### B.  *Procedural Background*

On April 29, 2013, Mr. Williams filed his pro se § 1983 Complaint and motion for class certification and a motion for the appointment of counsel in the Western District of Oklahoma. On May 10, 2013, the case was transferred to the Eastern District of Oklahoma, where Mr. Williams already had a number of unrelated cases pending.

Director Jones filed a motion to dismiss on July 31, 2013, arguing that Mr. Williams had failed to allege Direct Jones's personal participation in the conduct constituting the violation. The district court entered three Orders on March 18, 2014, denying class certification and appointment of counsel and granting Director Jones's 12(b)(6) Motion to Dismiss. That same day, the district court also made a minute entry denying Mr. Williams's motion for a preliminary injunction. (Dkt. No. 29.) On June 19, 2014, Defendants Wilkinson and Wideman filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[5] and on June 27,

---

[5] In their 12(b)(6) Motion to Dismiss, Defendants Wilkinson and Wideman did not raise a qualified immunity defense and they have not filed any other responsive pleading raising qualified immunity as an affirmative defense. Accordingly, it is premature to consider how such a defense might affect Mr. Williams's claims. *See Kay v. Bemis*, 500 F.3d 1214, 1221 n.6 (10th Cir. 2007) (reversing 12(b)(6) dismissal of prisoner's religious-freedom claim and noting that qualified immunity remained an issue to be addressed on remand because the prison defendants had not yet filed any responsive pleadings outlining their defenses); *cf. Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) ("In the context of affirmative defenses, we have cautioned that *sua sponte* dismissal [under 28 U.S.C. § 1915(e)] on such grounds should be reserved for those extraordinary instances when the claim's factual backdrop clearly beckons the defense." (internal quotation marks omitted)). We decline to consider sua sponte an unraised

2014, Mr. Williams filed a motion to amend requesting leave to rejoin Director Jones and to add Corrections Corporation of America, a private company that contracts with the ODOC to run DCF.

The district court denied the motion to amend and separately dismissed without prejudice Mr. Williams's communal-services claim for failure to exhaust administrative remedies. The district court also dismissed with prejudice for failure to state a claim upon which relief can be granted Mr. Williams's faith-based kosher-diet request and his equal-protection claim. And the district court found the action frivolous and counted it as Mr. Williams's first "strike" under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g). The Final Judgment was entered that same day and refers specifically to the earlier dismissal of former Director Jones from the action. Mr. Williams filed a timely Notice of Appeal on March 26, 2015.

As an initial matter, Mr. Williams concedes events occurring since he filed his pro se Complaint have mooted certain of his claims. First, Mr. Williams's *official-capacity* § 1983 claim against Director Patton[6] seeking an injunction allowing Mr. Williams to attend Friday prayer services is moot because Mr. Williams was transferred from maximum-security status at DCF to Lexington, a medium-security prison, where he is allowed to and does attend communal-religious services. Also, Mr. Williams's *official-*

---

qualified immunity defense under 28 U.S.C. § 1915(e) because Mr. Williams's Complaint does not provide a "factual backdrop [that] clearly beckons" dismissal on that basis. See Part III.B.1.a, *infra.*

    [6] Robert Patton replaced former Director Jones as ODOC Director and was therefore automatically substituted as the defendant here. *See* Fed. R. App. P. 43(c)(2).

*capacity* § 1983 claims seeking an injunction against former Director Jones, Warden Wilkinson, and Chaplain Wideman are moot because Mr. Jones resigned as the ODOC's director and Mr. Williams is no longer housed at DCF where Warden Wilkinson and Chaplain Wideman are located. *See Jordan v. Sosa*, 654 F.3d 1012, 1027–28 (10th Cir. 2011) (explaining that a prisoner's official-capacity claim for injunctive relief against a prison official is mooted when the prisoner is transferred to a different facility).

But these events have not mooted Mr. Williams's remaining claims, which include his *personal-capacity* § 1983 claims seeking money damages from former Director Jones, Warden Wilkinson, and Chaplain Wideman and his *official-capacity* claim under the Religious Land Use and Institutionalized Person Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5, against Director Patton, seeking an injunction allowing him to receive kosher food.[7]

## III.  DISCUSSION

Mr. Williams appeals the district court's orders (A) dismissing without prejudice his communal-services RLUIPA and First Amendment claims for failure to exhaust administrative remedies; (B) dismissing with prejudice his kosher-diet RLUIPA and First Amendment claims, Equal Protection claim, and personal-capacity claims against Director Jones, each for failure to state a claim; and (C) denying his motions to appoint counsel, for class certification, and to amend his Complaint. We affirm in part and reverse in part.

---

[7] To the extent Mr. Williams requests further clarification or relief in his Motion for Clarification on the Parties to this Appeal, his motion is denied.

### A.  *Exhaustion of Administrative Remedies*

Relying on incorrect information provided by ODOC, the district court found Mr. Williams had failed to exhaust his administrative remedies on his communal-services claim. Defendants now concede Mr. Williams had exhausted his administrative remedies as to this claim. As a result, the parties seek remand of Mr. Williams's communal-services claim for initial consideration by the district court. We agree and remand Mr. Williams's claims arising from DCF's cessation of Friday communal-religious services for maximum-security Muslim inmates that have not become moot.

### B.  *Failure to State a Claim*

"We review a Rule 12(b)(6) dismissal de novo. At the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014) (internal quotation marks and citation omitted).[8] In doing so, we "ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). Thus, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[8] Also, we generally review for an abuse of discretion a district court's dismissal of a claim as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). *Conkle v. Potter*, 352 F.3d 1333, 1335 n.4 (10th Cir. 2003). But when the district court's frivolousness determination turns on an issue of law, as it does here, we review the order de novo. *Id.* Because we reverse and remand as to a number of Mr. Williams's claims, we hold that they are not frivolous and also remove the "strike" imposed by the district court under 28 U.S.C. § 1915(g).

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## 1. RLUIPA

Defendants argued to the district court that Mr. Williams, as a Muslim, is required by Islam to eat halal food rather than kosher food. And because Mr. Williams has not alleged that he requested and was denied halal food, the Defendants contend he has failed to state a claim that being denied a kosher diet substantially burdens his religious exercise in violation of RLUIPA. The district court agreed, finding, with our emphasis, that Mr. Williams

> does not assert he *requires* a kosher diet to practice his sincerely-held beliefs. Instead, he states he "requested a diet (kosher) per his religious faith on 8/22/2012." He, however, has failed to articulate why he *needs* a kosher diet, instead of a halal diet, to practice his religion. In addition, he has not shown that his religious exercise is subject to a substantial burden by the government.

The district court erred by inserting a "religious requirement" element into RLUIPA and by concluding that Mr. Williams had not pleaded a substantial burden on his religious exercise.

In advocating this approach, Defendants seem to have relied on an outdated version of the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4.[9] Under a previous version of RFRA, we held that "[t]o exceed the 'substantial burden' threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some *central tenet* of a prisoner's individual beliefs." *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995) (emphasis added).[10] Plaintiffs seeking relief under this version of RFRA were required to link their religious-exercise request with a central tenet of their religion. *See id.*[11] But this religious requirement changed even in the RFRA context after amendments to RFRA eliminated the "central tenet" language and thereby any requirement that the infringed practice be something "fundamental" to the beliefs of followers of the plaintiff's religion. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 662–63 (10th Cir. 2006); *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001) ("Under the definition of 'religious exercise' in [RFRA], a religious exercise need not be mandatory for it to be protected under RFRA.").

---

[9] "This court has recognized that [RFRA] and First Amendment precedent provides guidance in interpreting RLUIPA." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1313 n.5 (10th Cir. 2010).

[10] The Supreme Court subsequently held that RFRA does not apply to the States. *See City of Boerne v. Flores*, 521 U.S. 507 (1997).

[11] DCF Policy OP 030112 V.A., "Religious Rites," as quoted by Mr. Williams, appears to be similarly outdated. *See* note 4, *supra.*

a.  *The statutory and interpretive framework of RLUIPA*

Like the amended version of RFRA, RLUIPA includes no requirement that a

plaintiff's sincerely held religious belief be fundamental to, or a central tenet of, his

religion. In relevant part, RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise
> of a person residing in or confined to an institution, . . . even if the burden
> results from a rule of general applicability, unless the government
> demonstrates that imposition of the burden on that person—
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling
> > governmental interest.

42 U.S.C. § 2000cc-1(a). We have previously distilled the elements a plaintiff must plead

to state a RLUIPA claim to an allegation the plaintiff "wishes to engage in (1) a religious

exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a

substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301,

1312 (10th Cir. 2010).

Significant for our purposes, "Congress defined 'religious exercise' capaciously to

include 'any exercise of religion, *whether or not compelled by, or central to*, a system of

religious belief.'" *Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015) (emphasis added) (quoting

§ 2000cc-5(7)(A)). Indeed, the Supreme Court has admonished that "RLUIPA bars

inquiry into whether a particular belief or practice is 'central' to a prisoner's religion."

*Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (overruling Establishment Clause

challenge to RLUIPA).[12] And Congress has further instructed that RLUIPA must "be

---

[12] RLUIPA "does not preclude inquiry into the sincerity of a prisoner's professed
religiosity." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005); *see also Holt v. Hobbs*,

construed in favor of a broad protection of religious exercise." 42 U.S.C. § 2000cc-3(g).

As a result, a plaintiff's sincerely held religious belief is protected by RLUIPA, even

when it is not a recognized tenet of his religion or consistent with the beliefs of others

who practice his faith.

To survive a motion to dismiss, therefore, Mr. Williams was required to allege

only that his request to eat a kosher diet was motivated by a sincerely held religious belief

and that his exercise of that belief has been substantially burdened by the government.[13]

*Abdulhaseeb*, 600 F.3d at 1312. This inquiry is specific to Mr. Williams's subjective

beliefs: "[T]he issue is not whether the lack of a [kosher diet] substantially burdens the

religious exercise of any Muslim practitioner, but whether it substantially burdens [Mr.

Williams's] own exercise of his sincerely held religious beliefs." *Id.* at 1314; *see also id.*

at 1312–14, 1316–17 (reversing summary judgment on prisoner's RLUIPA claims

---

135 S. Ct. 853, 862 (2015) ("[O]f course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation."). But this inquiry is not appropriate at the pleadings stage because it is dependent upon a factual investigation into the sincerity of the plaintiff's belief. For purposes of a motion to dismiss, we must accept as true the plaintiff's assertion that the request is motivated by his sincerely held religious belief. *See Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014) ("Neither must the religious claimant prove that the exercise at issue is somehow 'central' or 'fundamental' to or 'compelled' by his faith.").

[13] It is not until the summary-judgment phase that "the burden of proof shifts to the defendants to show the substantial burden results from a compelling governmental interest and that the government has employed the least restrictive means of accomplishing its interest." *Abdulhaseeb*, 600 F.3d at 1318 (internal quotation marks omitted); *accord Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 38 (1st Cir. 2007) (citing 42 U.S.C. § 2000cc-2(b)); *cf. Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007) ("The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, and therefore the issue of sincerity can rarely be determined on summary judgment, let alone a motion to dismiss." (internal quotation marks and ellipsis omitted)).

because of material issues of disputed fact on whether the denial of a halal-certified diet substantially burdened the exercise of his sincerely held religious beliefs when a non-pork, vegetarian diet was available to him). Accordingly, we must review Mr. Williams's Complaint to determine whether he has alleged a substantial burden on his exercise of a sincerely-held religious belief.

Defendants contend Mr. Williams's "Complaint was devoid of any assertion that he *had to have* a kosher diet to practice sincerely-held religious beliefs." Specifically, they argue "Plaintiff-Appellant, a Muslim inmate, asked to be served a kosher diet. A halal diet was available for the asking. Plaintiff-Appellant made no assertion a halal diet was unavailable to him." Defendants therefore rely on the fact that prison policy allows followers of Islam to request a halal diet, which other Muslim prisoners accept as consistent with the tenets of Islam. But, as discussed, the fact that a prisoner's sincerely-held belief is idiosyncratic compared to a more widely shared interpretation of a particular religion does not change the subjectivity of the inquiry, particularly at the pleading stage. Nor is it fatal to Mr. William's RLUIPA claim that other Muslim inmates are content with a halal diet:

> Even if others of the same faith may consider the exercise at issue unnecessary or less valuable than the claimant, even if some may find it illogical, that doesn't take it outside the law's protection. Instead, RLUIPA protects any exercise of a sincerely held religious belief. When a sincere religious claimant draws a line ruling in or out a particular religious exercise, "it is not for us to say that the line he drew was an unreasonable one."

*Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981)).

Next, Defendants point to the verse from Surah 5 of the Qur'an offered by Mr.

Williams as support for his request for a kosher diet, which states "[t]he food of the

People of the Book (Jewish) is lawful unto you and yours is lawful unto them." They

contend this verse is permissive because it allows Mr. Williams to eat either a kosher or a

halal diet. Defendants argue, therefore, that the verse cannot support Mr. William's

request for a kosher diet because a halal diet is available to him upon request. But as

discussed, Mr. William's belief need not be supported by the text of the Qur'an at all.

Furthermore, "[u]nder [RLUIPA], it isn't for judges to decide whether a claimant who

seeks to pursue a particular religious exercise has 'correctly perceived the commands of

[his] faith' or to become 'arbiters of scriptural interpretation.'" *Yellowbear*, 741 F.3d at

54–55 (quoting *Thomas*, 450 U.S. at 716 (stating also that "[c]ourts are not arbiters of

scriptural interpretation")).

Nor may the courts decide at the pleading stage that the tenets of the subject

religion can be satisfied by alternative methods. *Thomas*, 450 U.S. at 716 ("[I]t is not

within the judicial function and judicial competence to inquire whether the petitioner or

[another] more correctly perceived the commands of their common faith."). As the

litigation progresses, the government may satisfy RLUIPA by establishing that denying

the prisoner's request for an accommodation is the least restrictive means of achieving a

compelling government interest. But at the motion-to-dismiss stage, the prisoner need

allege nothing more than a substantial burden on the exercise of a sincerely-held religious

belief.

14

Mr. Williams has met that burden here. In his Complaint, Mr. Williams alleges he is a Muslim and notes his belief that a kosher diet is "mandated by his religion." He also states that "every time [he] ate a prison meal," he suffered mental anguish and sometimes a lost appetite "due to the fact he could not practice his religion pursuant to his religious precepts." Reading Mr. Williams's pro se Complaint liberally and taking all reasonable inferences as true, we conclude he has asserted that the request for a kosher diet is motivated by his sincerely held religious belief. As a result, we conclude that Mr. Williams's Complaint sufficiently pleads this element of a RLUIPA claim for purposes of Rule 12(b)(6). *See* 42 U.S.C. § 2000cc-1(a); *Twombly*, 550 U.S. at 570; *cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that a pro se petitioner "bolstered his claim by making more specific allegations in documents attached to the complaint and in later filings.").

In reaching this conclusion, we acknowledge the Complaint is not entirely clear on whether Mr. Williams's sincerely held religious belief permits him to eat only a kosher diet, or whether he believes he can exercise his faith by eating either a kosher or a halal diet. We faced a similar ambiguity in *Abdulhaseeb*. But as Judge Gorsuch noted in his concurring opinion there, even where "we have struggled to ascertain the exact parameters of [a] *pro se* complaint," the pro se prisoner, "[a]s both the summary judgment non-movant and a *pro se* litigant . . . deserves the benefit of the doubt." 600 F.3d at 1324–25 (Gorsuch, J., concurring). Thus, the panel in *Abdulhaseeb* read the inmate's complaint as alleging a sincerely held religious belief that he could eat only halal-certified food and not the non-pork, vegetarian option the prison and some other

15

Muslim inmates believed complied with Islam. *Id.* at 1325. Such a charitable reading is

likewise appropriate here. *Id.* at 1325–26. We therefore give Mr. Williams the benefit of

the doubt and interpret his Complaint as alleging his requested religious exercise—eating

a kosher diet—was motivated by a sincerely held religious belief that he could eat only a

kosher diet and not the halal diet offered by DCF. Accordingly, here, as in *Abdulhaseeb*,

the Complaint gives us "no opportunity to consider whether a prisoner who may eat

ODOC's [halal] diet but who is denied any access to [kosher] foods can state a RLUIPA

claim." *See id.* at 1325–26.

    b.  *Substantial burden on religious exercise*

    "In addition to [alleging for purposes of RLUIPA] that the relevant exercise of

religion is grounded in a sincerely held religious belief, [Mr. Williams] also [bears] the

burden of [alleging] that the [ODOC's denial of his kosher-diet request] substantially

burdened that exercise of religion." *Holt*, 135 S. Ct. at 862; *see also Abdulhaseeb*, 600

F.3d at 1312 (holding that RLUIPA plaintiff must adequately allege that his religious

exercise "is subject to a substantial burden imposed by the government"). Defendants

argued in their Motion to Dismiss that "Plaintiff has failed to plead how being denied a

*kosher* diet imposes a substantial burden on his religious free exercise when, as a Muslim,

he did not even request a *halal* diet." The district court agreed and dismissed Mr.

Williams's claim, stating he "ha[d] not shown that his religious exercise is subject to a

substantial burden by the government." But both of these conclusions are based on a

misunderstanding of the pleading requirements of the "substantial burden" element.

In *Yellowbear*, we defined a burden on religious exercise as "substantial" under

RLUIPA

> when (at the very least) the government (1) requires the plaintiff to
> participate in an activity prohibited by a sincerely held religious belief, (2)
> prevents the plaintiff from participating in an activity motivated by a
> sincerely held religious belief, or (3) places considerable pressure on the
> plaintiff to violate a sincerely held religious belief—for example, by
> presenting an illusory or Hobson's choice where the only realistically
> possible course of action available to the plaintiff trenches on sincere
> religious exercise.

741 F.3d at 55; *accord Abdulhaseeb*, 600 F.3d at 1315 (same). For purposes of evaluating

whether the prisoner has adequately pleaded a substantial burden, our inquiry is again

subjective: "we take religious claimants as we find them, assessing the coercive impact

[of] the government's actions on the individual claimant's ability to engage in a religious

exercise, as he understands that exercise and the terms of his faith." *Yellowbear*, 741 F.3d

at 55. Indeed, the Supreme Court clarified in *Holt* that under RLUIPA it is error to

conclude the government has not substantially burdened a prisoner's religion because of

"the availability of alternative means of practicing religion." *Holt*, 135 S. Ct. at 862.

"RLUIPA's 'substantial burden' inquiry asks whether the government has substantially

burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in

other forms of religious exercise." *Id.*

For example, in *Abdulhaseeb* we reversed the district court's decision granting

summary judgment in favor of the defendants because of a genuine issue of material fact

as to whether the prisoner's exercise of a sincerely held religious belief had been

17

substantially burdened by denying his request for a halal-certified diet. 600 F.3d at 1316.
We explained,

> [i]t is a *reasonable inference* that ODOC's failure to provide a halal diet
> either prevents Mr. Abdulhaseeb's religious exercise, or, at the least, places
> substantial pressure on Mr. Abdulhaseeb not to engage in his religious
> exercise by presenting him with a Hobson's choice—either he eats a non-
> halal diet in violation of his sincerely held beliefs, or he does not eat.

*Id.* at 1316–17 (emphasis added). That is, the denial of Mr. Abdulhaseeb's halal-certified
request raised a reasonable inference (and thus a genuine issue of material fact at the
summary-judgment stage) that the prison had substantially burdened his religious
exercise under either the second or third definitional categories recognized in *Yellowbear*.

Here, Defendants argue the prison denied Mr. Williams's kosher-diet request
because it already offered a halal diet to Muslim prisoners. In the prison's understanding,
denying Mr. Williams's faith-based kosher-diet request does not substantially burden his
religious exercise because a halal diet complies with Islam and is available. But as we
explained in *Yellowbear*, the subjective inquiry focuses on "the coercive impact [of] the
government's actions on [Mr. Williams's] ability to engage in a religious exercise, *as he
understands that exercise and the terms of his faith*." 741 F.3d at 55 (emphasis added).
Under these circumstances, the "reasonable inference" we identified in reversing
summary judgment in *Abdulhaseeb* is equally present here. That is, the failure to provide
Mr. Williams with a kosher diet will either prevent him from exercising his sincerely held
religious belief or force him to make the Hobson's choice of eating a diet contrary to his
beliefs or not eating at all. And this inference applies with even more force at the motion-
to-dismiss stage than the summary-judgment stage at issue in *Abdulhaseeb*. As the case

18

proceeds, evidence may be discovered that overcomes this inference. But at the pleading stage "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).

Mr. Williams's Complaint has facial plausibility that the government substantially burdened the exercise of his sincerely-held religious belief. The Complaint alleges Mr. Williams made a religiously-motivated request for a kosher diet, and that Defendants denied that request. We used similar facts to illustrate our interpretation of "substantial burden" under RLUIPA in *Yellowbear*:

> Take, for example, the case of the prison that fails to provide Jewish or Muslim inmates with food that satisfies their religious dietary restrictions. The prison may not formally require prisoners to violate their religious convictions—after all, the prison might say, there is no rule compelling prisoners to eat the food it provides, prisoners can purchase and supply their own—but surely the choice as presented remains a heavily freighted one.

741 F.3d at 55–56 (evaluating an inmate's religiously motivated request to visit the prison's sweat lodge alone). This hypothetical aptly describes the situation here. As pleaded, the prison's denial of Mr. Williams's religiously motivated request for a kosher-diet, whether or not shared by other Muslims, "falls easily within *Abdulhaseeb*'s second category—flatly prohibiting [Mr. Williams] from participating in an activity motivated by a sincerely held religious belief." *Id.* at 56.[14]

---

[14] We note that at least one district court within the Tenth Circuit has found that a Muslim inmate met his burden for RLUIPA and First Amendment purposes of showing his religious exercise was substantially burdened by a prison's refusal to provide him kosher food pursuant to his faith-based request. *Harvey v. Adams Cty. Sheriff's Office*,

In summary, Mr. Williams's Complaint alleges that he "requested a religious diet mandated by his religion." And in his internal requests and grievances to prison staff, Mr. Williams asked DCF to "[p]lease change my diet over to Kosher, pursuant to [Holy Qur'an: Surah 5:5]" and "[a]llow me a Kosher Diet in accordance to my faith, 'Holy Qu'ran' [sic]: Surah 5:5." The Complaint also alleges that DCF denied Mr. Williams's requests for a kosher diet. Accordingly, the Complaint adequately pleads that Mr. Williams "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb*, 600 F.3d at 1312.

We therefore reverse the district court's dismissal of Mr. Williams's kosher-diet RLUIPA claim and remand for further consideration in the district court.

## 2. First Amendment

The Complaint also alleges a First Amendment claim that survives Defendants' Rule 12(b)(6) Motion to Dismiss. "Even though they are incarcerated, prisoners retain fundamental constitutional rights. These rights include the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment." *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999) (citation omitted). For example, "[t]his circuit recognizes that prisoners have a constitutional right to a diet

---

No. 05-cv-01090-BNB-CBS, 2008 WL 2396761, at *7 (D. Colo. June 4, 2008) (finding that a Muslim plaintiff "met his burden of demonstrating that the defendants' denial of a Kosher diet substantially burdened his religious beliefs" for purposes of both the RLUIPA and First Amendment burden-shifting analysis and then denying the government's motion for summary judgment after considering its justifications for denying the diet request).

conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (reversing dismissal of First Amendment claims stemming from a denial of Jewish inmates' request for a kosher diet).

"[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must [allege] that a prison regulation substantially burdened sincerely-held religious beliefs." *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (internal quotation marks and ellipsis omitted). With respect to the second inquiry in a free exercise claim, "prison-official defendants may identify the legitimate penological interests that justified the impinging conduct," and the court must apply a balancing test to determine the reasonableness of the regulation. *Id.* at 1218–19 (brackets omitted); *see also Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (identifying four factors relevant to whether penological interests justify the conduct burdening the prisoner's free exercise).[15] But

---

[15] In *Turner*, the Supreme Court identified the following factors relevant to whether legitimate penological interests justify the conduct infringing upon a prisoner's constitutional right:

> (1) whether there exists a rational connection between the prison policy or regulation and a legitimate governmental interest advanced as its justification; (2) whether there are alternative means of exercising the right notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether there are ready, easy-to-implement alternatives that would accommodate the prisoner's rights.

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999) (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).

only the first of these inquiries is relevant at the motion-to-dismiss stage. *Kay*, 500 F.3d at 1219.

For purposes of Rule 12(b)(6), Mr. Williams has adequately stated a First Amendment free exercise claim if the Complaint alleges that Defendants substantially burdened the exercise of his sincerely-held religious belief. *Id*. Defendants contend he has failed to do so, again arguing the availability of a halal diet for Muslim inmates refutes any claim that denial of a kosher diet substantially burdened Mr. Williams's free-exercise rights. But Mr. Williams' First Amendment claim, like his RLUIPA claim, is not dependent on an allegation that a kosher diet is *necessary* to the practice of Islam. *Id.* at 1220.[16] Instead, "a prisoner's belief in religious dietary practices is constitutionally protected if the belief is 'genuine and sincere,' even if such dietary practices are not doctrinally 'required' by the prisoner's religion." *Id.* (citing *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991)). And, as with a RLUIPA claim, investigation into "the sincerity of [a First Amendment claimant's] beliefs [is] premature at this stage of the claim." *Id.* at 1219.

The Complaint adequately alleges Mr. Williams's request to exercise his sincerely held religious belief by eating a kosher diet. And the Complaint further alleges that DCF denied his requested accommodation. This is sufficient to satisfy the first step of a First Amendment free-exercise inquiry and to survive a Rule 12(b)(6) motion. The district

---

[16] "We acknowledge that other circuits [may] require that a prison regulation must interfere with a tenet or belief that is 'central' [to] or mandated by religious doctrine before a prisoner may state a claim under § 1983. The Tenth Circuit does not follow such a rule." *Kay*, 500 F.3d at 1219 (internal citation omitted).

court thus erred in dismissing Mr. Williams's Complaint because he "failed to articulate why he needs a kosher diet, instead of a halal diet, to practice his religion." "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) (emphasis added); *see also Kay*, 500 F.3d at 1220 (holding district court prematurely dismissed prisoner's free exercise claim where the complaint contained enough factual support "to rationally and plausibly conclude that [the prisoner was] a sincere devotee of the Wiccan faith" and "persistently asked prison administrators for permission to possess tarot cards in order to practice his religion," which requests were denied).

### 3. Former Director Jones

The district court granted former Director Jones's separate 12(b)(6) Motion to Dismiss on the ground that Mr. Williams had failed to plead Director Jones's personal participation in the alleged constitutional violations. In reaching that conclusion, the district court focused exclusively on precedent discussing "personal participation," *see, e.g.*, *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Mitchell v. Maynard*, 80 F .3d 1433, 1441 (10th Cir. 1996); *Mee v. Ortega*, 967 F.2d 423, 430–31 (10th Cir. 1992); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976), without considering the "personal involvement" required of supervisors or policymakers under § 1983, *see, e.g.*, *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (noting § 1983 requires a showing that each defendant violated a federally protected right "whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility"). But we

23

nevertheless affirm the district court's dismissal of the individual-capacity claims against former Director Jones based on our de novo application of the legal standard governing § 1983 liability based on the "personal involvement" of supervisors.

"Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (internal quotation marks omitted). We have explained, however, that such "personal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal quotation marks and brackets omitted). "Personal involvement does not require direct participation because § 1983 states any official who causes a citizen to be deprived of her constitutional [or other federally protected] rights can also be held liable." *Id.* (internal quotation marks omitted). But the elements of this "personal involvement" must still be sufficiently pleaded to state a claim for which relief can be granted.

To state a claim for a supervisor's personal liability under § 1983, a plaintiff must plead "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199; *Pahls*, 718 F.3d at 1225 ("[C]ommon to all § 1983 . . . claims is the requirement that liability be predicated on a violation traceable to a defendant-official's 'own individual actions.'" (quoting *Iqbal*, 556 U.S. at 676). Thus, the plaintiff must first "identify the specific policies over which particular defendants possessed

24

responsibility and that led to the alleged constitutional violation." *Pahls*, 718 F.3d at

1226. And then "[t]o establish a violation of § 1983 by a supervisor, as with everyone

else, . . . the plaintiff must establish a deliberate, intentional act on the part of the

defendant to violate the plaintiff's legal rights." *Porro v. Barnes*, 624 F.3d 1322, 1327–28

(10th Cir. 2010) (internal quotation marks and brackets omitted)).

The level of scienter required is based on the state of mind required to establish a

violation of the constitutional provision at issue. *Dodds*, 614 F.3d at 1204 ("The Court in

*Iqbal* explained that the factors necessary to establish a [supervisory official's] § 1983

violation depend upon the constitutional provision at issue, including the state of mind

required to establish a violation of that provision."). For example, "[w]here the claim is

invidious discrimination in contravention of the First and Fifth Amendments," the

Supreme Court in *Iqbal* explained, "the plaintiff must plead and prove that the defendant

acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676; *see Pahls*, 718 F.3d at 1230

n.8 ( "[W]e read *Iqbal* as saying that in the . . . § 1983 context, where liability is to be

imposed upon an *individual* defendant [supervisor] for discrimination in violation of the

First Amendment, a plaintiff must prove a discriminatory purpose, supported by evidence

of the defendant's subjective motivations."). Such "purposeful discrimination requires

more than 'intent as volition or intent as awareness of consequences.'" *Iqbal*, 556 U.S. at

676 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "It instead

involves a decisionmaker's undertaking a course of action 'because of, not merely in

spite of, the action's adverse effects upon an identifiable group.'" *Id.* at 767–77 (quoting

*Feeney*, 442 U.S. at 279 (internal quotation marks and brackets omitted)). Thus, to state a

claim for personal liability of a supervisor under § 1983, the plaintiff "must plead sufficient factual matter to show that [the defendant] adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *Id.* at 677.

Here, the Complaint alleges Director Jones "is the Director of DOC and *is responsible for* OP-030112 ~ 'Religious Policy & Regulations.'" Mr. Williams therefore argues Director Jones was ultimately responsible for the policy ending communal-religious services for maximum-security Muslim inmates and the policy excluding Muslims from the list approved to request a kosher diet. He further contends that this single allegation standing alone is enough to state a claim under Rule 12(b)(6) for § 1983 supervisor liability. We disagree. Even liberally construing Mr. Williams's pro se Complaint, *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005), it fails to state a claim.

    a.  *Communal-services claim*

Nowhere in the Complaint does Mr. Williams identify a policy for which Director Jones was responsible that relates to the cessation of communal services for maximum-security Muslim prisoners. And the allegations relating to the communal-services claim contained in "Count I" of the Complaint fail to plead any personal involvement of Director Jones in formulating or supervising a policy to cancel communal-religious services for Muslim maximum-security inmates at DCF. Despite that deficiency, Mr. Williams argues he has stated a claim because this court has already determined that "the

26

director of ODOC has final policymaking authority for ODOC." *Abdulhaseeb*, 600 F.3d at 1312. But Mr. Williams takes this statement out of context.

In *Abdulhaseeb*, we considered whether the RLUIPA claims against prison officials acting in their official capacities were rendered moot by Eleventh Amendment immunity. *Id.* Ultimately, we found it unnecessary to resolve that issue because regardless of whether Mr. Abdulhaseeb could recover money damages against the defendants in their official capacities, "the courts may still fashion some effective relief." *Id.* We reasoned that the director of ODOC was a party to the litigation, the denial of a halal-certified diet was based on ODOC policies, "the director of ODOC has final policymaking authority for ODOC," and "a judgment in [Mr. Abdulhaseeb's] favor may require ODOC to modify those policies." *Id.* Thus, it was still possible for the court to reach a result with real world consequences and the RLUIPA claims were not moot. *Id.*[17]

Here, unlike in *Abdulhaseeb,* Mr. Williams has failed to identify a particular ODOC policy related to the cessation of communal services for maximum-security Muslim prisoners. *See Pahls*, 718 F.3d at 1226. Nor has Mr. Williams alleged Director Jones was personally involved in any informal policy *DCF staff* implemented to end congregate-religious services for maximum-security Muslim inmates. Thus, even accepting that Director Jones has policymaking authority over ODOC policy, Mr. Williams must identify some ODOC policy that caused his deprivation. The Complaint neither identifies such a policy nor alleges that Director Jones was personally involved in

---

[17] Similarly, here, we acknowledge that injunctive relief may still be available against *current* ODOC Director Patton in his official capacity.

the decision to end communal services. Accordingly, Mr. Williams has failed to state a section 1983 claim against former Director Jones based on the cessation of communal services for maximum-security Muslim inmates.

b. *Kosher-diet claim*

We also affirm the dismissal of Mr. Williams's claim against Director Jones for the denial of his kosher-diet request. For this claim, Mr. Williams has identified an ODOC policy that excludes Muslims from the list of prisoners entitled to request a kosher diet. But the Complaint contains no allegations that Director Jones's formulation of the policy was motivated by a discriminatory intent. As such, it also fails to state a claim as a matter of law.

Mr. Williams's Complaint "does not contain any factual allegation sufficient to plausibly suggest [Director Jones's] discriminatory state of mind." *Iqbal*, 556 U.S. at 683. His "bare assertion" that former Director Jones was "responsible for" the kosher-diet policy "amount[s] to nothing more than [an attempted] formulaic recitation of the elements" of a violation of these federally protected rights. *Id.* at 681 (internal quotation marks omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"[18] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Accordingly, we

_____

[18] The Complaint also alleges Defendants violated Mr. Williams' Fourteenth Amendment right to Equal Protection because under the ODOC policy, Jews, Messianic Jews, and House of Yahweh adherents "are allowed to be provided diets mandated by their religion," whereas "the same policy" does not allow this to Muslims. We need not analyze Mr. Williams's equal-protection claim in detail because we hold that he "has not distinguished this claim from his free-exercise claim." *Fields v. City of Tulsa*, 753 F.3d

affirm the district court's Rule 12(b)(6) dismissal of Mr. Williams's allegations against former Director Jones.

### C.  *Other Motions*

Mr. Williams's appeal also encompasses the district court's denial of three other motions: his motion for appointment of counsel, for class certification, and to amend his Complaint. We reverse the first two and affirm the third. Additionally, because we reverse the district court's dismissal of Mr. Williams's RLUIPA and First Amendment claims, we also reverse the district court's minute entry summarily denying Mr. Williams's Motion for Preliminary Injunction and the district court's application of a strike pursuant to 28 U.S.C. § 1915(g). And we authorize Mr. Williams to proceed in forma pauperis because, as our analysis above shows, his claims are not frivolous for purposes of 28 U.S.C. § 1915(e).

### 1.  Appointment of Counsel and Leave to Proceed in Forma Pauperis

The district court found that Mr. Williams's claims lacked sufficient merit to warrant appointment of counsel and denied his motion. *See McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985). Because we reverse and remand as to Mr. Williams's RLUIPA and First Amendment claims, we also reverse the district court's denial of Mr.

---

1000, 1012 (10th Cir. 2014) (affirming dismissal of an equal-protection claim because it was a rephrasing of a free-exercise claim dismissed at summary judgment). Here, as in *Fields*, Mr. Williams's cursory equal-protection claim "is nothing more than a rephrasing of his free-exercise claim." *Id.* (internal quotation marks omitted) (citing *Prince v. Massachusetts*, 321 U.S. 158, 170 (1944)). Accordingly, we affirm the district court's dismissal of this claim because our simultaneous denial of Mr. Williams's motion to amend his Complaint, as discussed below, means that Mr. Williams cannot now differentiate his equal-protection claim from this free-exercise claim.

Williams's motion to appoint counsel based on the assessment that such claims lacked merit. We therefore remand so the district court can reassess the merits of Mr. Williams' motion for the appointment of counsel in light of our decision.

And we grant Mr. Williams leave to proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(1) (providing that "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor" under certain circumstances). We also reverse the district court's finding that Mr. Williams's claims are frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) and vacate the first strike assessed against him by the district court.

## 2. Class Certification

Mr. Williams pursues his RLUIPA and First Amendment claims on behalf of a "fluid" class of all Muslims in the state prison system. "When the district court has applied the proper standard in deciding whether to certify a class, we may reverse that decision only for abuse of discretion." *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988). Rule 23(a) governs the threshold class certification criteria and requires consideration of the following elements: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997) (alterations in original) (quoting Fed. R. Civ. P. 23(a)).

The district court here performed an abbreviated Rule 23 class-certification analysis. It found that as a pro se litigant, Mr. Williams could not represent the class on his own and denied the motion on that basis. *See* Fed. R. Civ. P. 23(a)(4) (requiring the class representative to fairly and adequately protect the interests of the class). The district court's ruling is "consistent with our practice of not certifying pro se class actions." *Lowery v. Edmondson*, 528 F. App'x 789, 793 (10th Cir. 2013) (unpublished) (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)). But Mr. Williams specifically acknowledged this too, anticipating that counsel appointed pursuant to his concurrently filed motion would act as class counsel. We therefore reverse the denial of class certification and remand for reconsideration in conjunction with the motion for appointment of counsel. In doing so, we express no opinion on whether the motion should be granted, but simply afford the district court maximum flexibility on remand. *See Hagan v. Rogers*, 570 F.3d 146, 159 (3d Cir. 2009) ("We likewise find it premature for the District Court to conclude that [pro se prisoners'] representation of the class would be inadequate before the Court decided whether to appoint counsel.").

### 3.  Motion to Amend

The district court denied Mr. Williams's motion to amend as untimely. We affirm.

Mr. Williams filed his motion to amend on June 27, 2014, more than a year after he filed the Complaint on April 29, 2013. Moreover, he filed it almost a year after former Director Jones filed his Rule 12(b)(6) Motion to Dismiss on July 31, 2013. Rule 15(a)(1) allows a plaintiff to amend a complaint once as a matter of course within 21 days of filing the complaint or within 21 days of either service of a responsive pleading or service of a

motion under Rule 12(b)(6). *See* Fed. R. Civ. P. 15(a)(1)(A), (B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* 15(a)(2). As the district court observed, "untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993) (citations omitted). Mr. Williams has identified no adequate explanation for the delay here. We therefore hold the district court did not abuse its discretion in denying the motion to amend under these circumstances.

## IV.  CONCLUSION

We reverse the district court's dismissal of Mr. Williams's communal-services RLUIPA and First Amendment claims for failure to exhaust administrative remedies and his kosher-diet RLUIPA and First Amendment claims for failure to state a claim. We also reverse the district court's denial of Mr. Williams's motion to appoint counsel, class certification, and motion for a preliminary injunction. We remand for further proceedings consistent with the foregoing and authorize Mr. Williams to proceed in forma pauperis. But we affirm the district court's dismissal of Mr. Williams's equal-protection claim and personal-capacity claims against former Director Jones for failure to state a claim and its denial of his motion to amend.

Because we reverse and remand as to several of Mr. Williams's claims and motions, we hold that his claims are not frivolous for purposes of 28 U.S.C.

§ 1915(e)(2)(B)(i) and we remove the strike imposed by the district court pursuant to 28

U.S.C. § 1915(g).

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge